AUSAs: Kathryn Wheelock / Jun Xiang / Andrew K. Chan

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 26 MAG 771

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violation of<br>18 U.S.C. § 1594 |
| JOSE LUIS HERNANDEZ PEREZ; and<br>ANDREINA DEL CARMEN HERNANDEZ; | COUNTY OF OFFENSE:<br>BRONX |
| Defendants. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTHONY QUINN, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

## COUNT ONE
### (Sex Trafficking Conspiracy)

1.      In at least 2024, in the Southern District of New York and elsewhere, in and affecting interstate and foreign commerce, JOSE LUIS HERNANDEZ PEREZ and ANDREINA DEL CARMEN HERNANDEZ, the defendants, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause the persons to engage in a commercial sex act, in violation of 18, United States Code, Sections 1591(a) and (b)(1), to wit, HERNANDEZ PEREZ and DEL CARMEN HERNANDEZ, and others known and unknown, agreed to recruit, entice, harbor, transport, provide, and maintain young women from Venezuela (the "Trafficking Victims") and cause the Trafficking Victims to engage in commercial sex acts in the United States, including in the Bronx, New York and in Seattle, Washington, knowing and in reckless disregard of the fact that force, threats of force, fraud and coercion would be used to cause the Trafficking Victims to engage in commercial sex acts.

(Title 18, United States Code, Section 1594(c).)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.      I am a Special Agent with HSI and I have been personally involved in the investigation of this matter.  This affidavit is based upon my personal participation in the investigation, and my conversations with law enforcement officers, law enforcement employees, and witnesses, as well as my review of documents.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have

learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.      Since at least in or about October 2024, I and other law enforcement officers with HSI and the New York City Police Department have been conducting an investigation of suspected members and associates of the transnational gang Tren de Aragua ("TDA"), as well as a splinter faction known as "Anti-Tren," which is almost exclusively comprised of former members and associates of TDA. JOSE LUIS HERNANDEZ PEREZ and ANDREINA DEL CARMEN HERNANDEZ, the defendants, are targets of this investigation. Law enforcement database photographs of the defendants, with whose appearances I have become familiar over the course of the investigation, are below:

 

DEL CARMEN HERNANDEZ                    HERNANDEZ PEREZ

4.      Based on my training and experience, my review of publicly available social media accounts, my interviews of current and former self-identified TDA and/or Anti-Tren members, my interviews of other witnesses and Trafficking Victims, as well as my personal surveillance of individuals identified by witnesses as, or otherwise believed to be, TDA and/or Anti-Tren members, I know that TDA is a violent transnational gang, originating in Venezuela, that has established a substantial foothold in the United States, including in New York City. I have learned that members of TDA and Anti-Tren generate income for their respective gangs by, among other things, engaging in the sex trafficking of women. TDA and Anti-Tren members use threats of violence and actual violence, including pistol whippings, to force the Trafficking Victims to engage in commercial sex work. In connection with the investigation, 25 members of Anti-Tren have been charged with racketeering conspiracy, sex trafficking conspiracy, sex trafficking and other offenses in United States v. Gonzales-Valdez, et al., 25 Cr. 76 (MKV) (S.D.N.Y.).

5.      During the investigation, a cooperating witness ("CW-1")[1] identified the individuals in the above photographs as JOSE LUIS HERNANDEZ PEREZ and ANDREINA

---

[1]      CW-1 is a Venezuelan national currently present in the United States without lawful immigration status. CW-1 has entered into a cooperation agreement with the Government and is providing information to the Government in the hope of leniency at sentencing, in order to secure the Government's assistance with ensuring the safety of CW-1's family, and in the hope of receiving immigration benefits. CW-1 has pleaded guilty to an Information charging CW-1 with,

DEL CARMEN HERNANDEZ, the defendants.  According to CW-1, HERNANDEZ PEREZ and DEL CARMEN HERNANDEZ are siblings.

6.      CW-1 stated that, based on CW-1's own observations, CW-1 was aware that beginning in at least 2024, JOSE LUIS HERNANDEZ PEREZ, the defendant, was a member of the "Espartanos," an Anti-Tren set that operated in Seattle and New York that was led by Jesus David Barrios Garcia, a/k/a "Morocho" ("Barrios Garcia").[2]  The Espartanos engaged in sex trafficking of women—whom they called "multadas"—in both cities.  The Espartanos transported the women between the two locations to draw more business, including to an apartment that I know, based on my involvement in this investigation and interviews with witnesses, was located in the Bronx.  Among other tactics, the Espartanos threatened the Trafficking Victims and their families with violence if they did not continue engaging in sex work and hit the Trafficking Victims, including with firearms.  The victims were made to work at least six days each week and to perform sexual acts for multiple clients each day.

7.      Based on CW-1's conversations with other members of the Espartanos, CW-1's conversations with the Trafficking Victims, and CW-1's personal observations of the interactions between the Espartanos and the Trafficking Victims, CW-1 understood that the Trafficking Victims were being forced to engage in the sex work and hand over their earnings to Barrios Garcia, and that they would be physically punished if they failed to do so or otherwise tried to escape.

8.      CW-1 explained, in sum and substance and among other things, the following:

a.   Barrios Garcia directed members of the Espartanos, including JOSE LUIS HERNANDEZ PEREZ, the defendant, to drive the sex trafficking victims to see clients and to collect money from them.

b.   HERNANDEZ PEREZ resided, at times, with Barrios Garcia at a location where Trafficking Victims also lived in Seattle.

c.   HERNANDEZ PEREZ carried a firearm and on one occasion, at Barrios Garcia's orders, shot another member of the Espartanos—Danger Sanchez Alfonzo—who was in a relationship with one of the Trafficking Victims, which was not permitted by Barrios Garcia.

d.   ANDREINA DEL CARMEN HERNANDEZ, the defendant, also participated in the sex trafficking scheme.  Images and profiles for the Trafficking Victims were posted on

---

among other offenses, racketeering conspiracy and sex trafficking conspiracy.  The information provided by CW-1 has been corroborated by, among other things, law enforcement reports regarding criminal activity, other witnesses, including victims of sex trafficking, and cellphone evidence.

[2]      Barrios Garcia has been charged in United States v. Gonzalez Valdez, S4 25 Cr. 76, with crimes including racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), sex trafficking conspiracy, in violation of 18 U.S.C. § 1594, and sex trafficking, in violation of 18 U.S.C. § 1591, for his involvement in sex trafficking women in New York and Seattle with Anti-Tren.

websites advertising them for paid sexual services. DEL CARMEN HERNANDEZ, the defendant, monitored the websites and responded to inquiries from potential clients.

e. After receiving inquiries via the websites, DEL CARMEN HERNANDEZ would contact Barrios Garcia, who would then direct members of the Espartanos to drive the Trafficking Victims to see the clients to engage in sex work.

f. On multiple occasions, CW-1 saw DEL CARMEN HERNANDEZ communicate with potential clients using multiple cellphones.

g. DEL CARMEN HERNANDEZ was responsible for keeping the ledger of the Trafficking Victims' earnings, including tallying how much clients owed to ensure that the clients and Trafficking Victims did not short DEL CARMEN HERNANDEZ and Barrios Garcia.

h. DEL CARMEN HERNANDEZ used CashApp and Zelle in connection with payments for sex trafficking.

9. Based on my communications with other law enforcement officers, my review of law enforcement records and reports and records obtained in response to subpoenas, my review of electronically-stored information, and my involvement in this investigation, I am aware of the following:

a. In or about May 2024, local law enforcement officers in Seattle, Washington acting in an undercover capacity (the "UCs") visited websites that hosted online advertisements for women to perform sexual services. The UCs contacted multiple phone numbers listed on the websites for services. In response to one of the messages, a UC received a message requesting that payment be sent to another phone number, ending in -8758 (the "8758 Phone Number").

b. The 8758 Phone Number is listed as a phone number associated with a Zelle account registered in the name "Andreina Hernandez Perez" (the "Andreina Zelle Account"), that is, a name substantially similar to ANDREINA DEL CARMEN HERNANDEZ, the defendant.

c. Throughout 2024, the Andreina Zelle Account made frequent money transfers, ranging from approximately $20 to $500, to a Zelle account registered in the name of "Jesus Barrios Garcia," that is, the name of the individual identified by CW-1 as the leader of the Espartanos who routinely received payment from the Trafficking Victims after they performed sex acts advertised on the websites.

d. On or about December 9, 2024, Sanchez Alfonzo[3] was arrested in connection with a local law enforcement undercover operation targeting sex trafficking in the Seattle area. During that operation, a undercover law enforcement officer, posing as a potential

---

[3]    Like Barrios Garcia, Sanchez Alfonzo has been charged in United States v. Gonzalez Valdez, 24 25 Cr. 76, with crimes including racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), sex trafficking conspiracy, in violation of 18 U.S.C. § 1594, and sex trafficking, in violation of 18 U.S.C. § 1591, for his involvement in sex trafficking women with Anti-Tren.

4

client, communicated with a phone number that had been included on an online post advertising a woman for sex services. The undercover law enforcement officers arranged to meet the woman at a particular room in a particular hotel outside of Seattle where a woman ("Woman-1"), whose identity is known to law enforcement appeared and agreed with the undercover officer to engage in sex acts for $200. Sanchez Alfonzo subsequently appeared at the hotel room and was placed under arrest and a cellphone was seized from his person (the "Sanchez Alfonzo Cellphone").

10.     Based on law enforcement's review of the Sanchez Alfonzo Cellphone, pursuant to a judicially authorized search warrant, and my communications with other law enforcement officers, I am aware of the following:

a. The Sanchez Alfonso Cellphone contains photographs of multiple Zelle payments made to "Andreina Hernandez," that is, to an individual with a name substantially similar to ANDREINA DEL CARMEN HERNANDEZ, the defendant. Those payments included, for example, a $200 payment made to "Andreina Hernandez" on or about December 6, 2024.

b. The Sanchez Alfonzo Cellphone contains a group chat (the "Espartanos Group Chat") with multiple other individuals, including a phone number that I believe to have been used by Barrios Garcia, whose contact is saved as "Espartanos" on the Sanchez Alfonzo Cellphone. The Espartanos Group Chat included individuals engaged in sex trafficking as well as Trafficking Victims. In the Espartanos Group Chat, the participants discussed the women being sex trafficked—including women who are known to law enforcement as Trafficking Victims—and coordinated their services. For example, the participants in the Espartanos Group Chat discussed, among other things, which Trafficking Victims would be responding to which clients and where those clients were located. Based on my review of the Espartanos Group Chat, my review of electronically-stored information, and my, and other law enforcement officers', interviews in connection with this investigation, I am aware that, hours before Sanchez Alfonzo's arrest, a phone number associated with JOSE LUIS HERNANDEZ PEREZ, the defendant, was added to the Espartanos Group Chat by a contact saved with the name of an individual who law enforcement has identified as one of the Trafficking Victims (based on information from CW-1 and review of cellphones seized from members of the Espartanos).[4]

c. In addition, the Sanchez Alfonzo Cellphone contains communications between Sanchez Alfonzo and a contact saved as "Mi Esposa" (Spanish for "my spouse")—who I believe,

---

[4]     Based on my review of the Sanchez Alfonzo Cellphone and my communications with other law enforcement officers, I am aware that JOSE LUIS HERNANDEZ PEREZ, the defendant, was added to the Espartanos Group Chat just hours before the arrest of Sanchez Alfonzo and that he was the only person to send messages on the Espartanos Group Chat between his addition to the Espartanos Group Chat and law enforcement seizure of Sanchez Alfonzo's Cellphone. It is not currently known to law enforcement whether HERNANDEZ PEREZ had access to historical communications on the Espartanos Group Chat regarding the topics discussed in paragraph 10(b), above. However, based on my review of communications between HERNANDEZ PEREZ and Sanchez Alfonzo from the Sanchez Alfonzo Cellphone, I am aware that HERNANDEZ PEREZ—using a different communication application in which Sanchez Alfonzo had saved the contact as "Josee"—asked Sanchez Alfonzo to add him to the Espartanos Group Chat, to which HERNANDEZ PEREZ was added to only a few hours later.

based on my involvement in this investigation, to be Woman-1. In these communications, in part, Sanchez Alfonzo said to "Mi Esposa," on or about December 6, 2024, that he was "waiting for a job to come up for Jose." Later that day, Sanchez Alfonzo asked "Mi Esposa" who would be driving a woman to her service because "Jose said that he could not drive" on that occasion. Two days later, Sanchez Alfonzo texted "Mi Esposa" that "Jose says hurry up."[5] Based on my training and experience and involvement in this investigation, I understand this text message exchange to relate to HERNANDEZ PEREZ's role in driving Trafficking Victims to see clients and his availability, or lack thereof, to do so on certain occasions.

d. Also in the Espartanos Group Chat, the contact saved as "Espartanos"—that is, Barrios Garcia—sent a message on or about December 5, 2024 that stated "Andreina Hernandez" and a particular phone number ending in -8407 (the "8407 Phone Number"). Immediately thereafter, another individual, saved in the Sanchez Alfonzo Cellphone with a female name, sent a screenshot of a Zelle payment to an account in the name "Andreina Hernandez."[6] Based on the information set forth herein, including paragraphs 8 and 9 above, I believe that ANDREINA DEL CARMEN HERNANDEZ, the defendant, controls this Zelle account and received the payment discussed in the Espartanos Group Chat.

11. Based on my communications with other law enforcement officers and interviews with Trafficking Victims, I am aware that multiple Trafficking Victims identified JOSE LUIS HERNANDEZ PEREZ, the defendant, as an individual who worked with Barrios Garcia and is a member of Anti-Tren. One Trafficking Victim reported that HERNANDEZ PEREZ drove the Trafficking Victims to see clients. Further, multiple Trafficking Victims stated that they were

---

[5]     These messages were originally in Spanish and have been translated, in draft form, with the aid of a Spanish-speaking law enforcement employee.

[6]     Based on my review of subscriber information for the 8407 Phone Number, I am aware that the "user information" for this number is "Andreina Perez."

subjected to physical violence by Barrios Garcia and others at the Barrios Garcia's residence, where, as set forth above, I am aware HERNANDEZ PEREZ also lived at times.

WHEREFORE, I respectfully request that JOSE LUIS HERNANDEZ PEREZ and ANDREINA DEL CARMEN HERNANDEZ PEREZ, the defendants, be arrested, and imprisoned or bailed, as the case may be.

/s/ Anthony Quinn (by GS w/ permission)
ANTHONY QUINN
Special Agent, Homeland Security Investigations

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3),
this 11th day of March, 2026.

THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York

7